HENRY J. CONLEY, Admr.,

*vs.*

WASHINGTON CASUALTY INSURANCE COMPANY.

Cumberland.    Opinion January 4, 1900.

*Accident and Sickness.    Insurance.    Waiver.    Payment.    Notice.*

In an action by the administrator of the insured against an accident insurance company, upon a certificate which provided for the payment to the insured, subject to many conditions and qualifications, of the sum of $10 a week for each week's disability caused by accident or disease, and seeking to recover the stipulated sum per week from the beginning of the disability to the death, *held;* that the objections made by the defendant to the maintenance of the action based in part upon non-payment of dues, cannot be sustained, it appearing among other things that there was a waiver; but that the plaintiff has proved only a total disability of the insured, within the terms of the certificate, for a period of three weeks prior to his death.

ON REPORT.

This was an action on a policy of insurance against accident and disease, issued June 24, 1895, by the defendant company to John H. Flaherty, of Portland, to recover a balance of $170, for sick

benefits claimed by his administrator to be due from June 13, 1895, to and including November 28, 1895, the date of said Flaherty's death; ten dollars per week for twenty-three weeks, less sixty dollars which have been paid.

It appeared that in April 1894, said Flaherty took out a policy in defendant company, and June 24, 1895, the policy was exchanged for the policy upon which the suit was brought.

June 10, 1895, before the change of policies, said Flaherty paid his premiums, being then in arrears, up to May 27th, preceding, which was the last payment made on the policy; June 13, 1895, said Flaherty was taken sick.

Before the payment of June 10th the premiums were paid up only to May 13th, being more than two weeks and nearly four weeks in arrears, but by the payment of June 10th, being for two weeks, the premiums were paid up to May 27th, leaving two weeks then in arrears and unpaid, from May 27th to June 10th. On June 13th while said premiums were more than two weeks in arrears, not having been paid up in full on June 10th, and within one week after any payment of premiums was made, said Flaherty was taken sick.

The old policy was in force and he was sick on the twenty-fourth of June when this new policy was issued, and died on the twenty-eighth of November, 1895, from the sickness that he then had. There was no money paid for sick benefits until after the tenth of November, 1895, viz: ten dollars November 12, ten dollars November 19, ten dollars November 26, twenty dollars in December and again ten dollars in December, 1895.

The following terms and conditions are on the back of the policy:

Sec. 2.   " All dues are payable on Monday of each week, in advance, and no benefit will be paid for death or disability occurring while said dues remain more than two weeks in arrears, or for death or disability occurring within one week after said arrears shall be paid up in full; and if the dues are not paid within thirty days after due, this certificate shall be null and void."

Sec. 8. "The member agrees that if disabled by sickness or accident he must fill out, or cause to be filled out, the blanks furnished by said company, and immediately forward the same to said company, and he further agrees that he or his representatives must give proper notice to said company of any disability, and if not given within ten days from date of disablement he will forfeit any benefit until said notice is given, and unless said notice is given within sixty days from date of said disablement, he will not be entitled to any benefit for such disability."

The various contentions of the parties are stated in the opinion.

*D. A. Meaher*, for plaintiff.

If there had been no dues paid from June 10 up to November 28, a period of twenty-two and three-sevenths weeks, there would have been simply six dollars and fifty-one cents owing to the company. At no time after the sickness of Flaherty, and up to his death, did the company owe him less than thirty dollars. There was nobody authorized to receive these weekly benefits except the administrator and none of this money was paid to him by the company. It held the money without paying it over until after Flaherty died and claimed that he was behind on his dues with this large amount to his credit on the company's books. From this condition of things it would seem that the company now owes the estate, on their own admissions, the sum of thirty dollars, while from their own evidence and the testimony furnished by the plaintiff, there remains $170 claimed in this action. The premium receipt book shows that the last payment was June 10, 1895, when the deceased was first taken sick, and from which date he was entitled to weekly benefits up to the time of his decease, the company being all the time in his debt. The company seems to lay stress on the fact that they received only two doctor's certificates, but that should not relieve the company from its liability of performing what it assumed. Mrs. Flaherty kept the company informed of the sickness of her husband and of his death, and if they had required any further certificates, they would have been furnished at any time. The sole object of the company seems to be to get some excuse for delay in the payment of the dues and

some excuse for not paying a death benefit. Such would seem from the evidence throughout, to be the aim of this company and its agents.

Mrs. Flaherty testifies that there was another policy on the life of Mr. Flaherty in this company and the day he was taken sick he went to the office and exchanged it for the one on which we sue. She went three or four times to the company asking them to pay the weekly dues while her husband was sick before she received anything. She told the company she was in need of money and the company kept putting her off from time to time until at last it gave her ten dollars. Her claims for money were to the treasurer of the company. No reason was given why the balance was not paid, and the company promised to pay the rest.

It was ten dollars a week for every week he was sick. It is quite evident from the testimony of Mrs. Flaherty that at no time during her repeated visits was she notified that any further information was required except what the company had received and there was no claim made to her that there was anything for her to pay to the company. She understood and the company knew that there was a large amount to the credit of Mr. Flaherty in the hands of the company and Mrs. Flaherty must have felt she had done everything that the company asked. No agent of the company said to her that the premiums were paid up only to July 31st, or that the policy would be of no value after that date; and probably she never heard any claim of that nature from the company until she heard the testimony of the company's treasurer in court.

*M. P. Frank and P. J. Larrabee,* for defendant.

At the time of the occurrence of the disability June 13th, the policy was out of benefit or non-beneficial for the following reasons:

1st. Before the payment of June 10th the dues were certainly more than two weeks in arrears, and by the payment of June 10th the dues were not paid up in full, but were on June 13th more than two weeks in arrears.

2nd. The disability occurred within a week after the payment on June 10th, even if by that payment the dues had been paid up

in full to that time, which they were not, but were still then two weeks in arrears. So that by the non-payment of dues and non-compliance with the conditions contained in Sec. 2, said policy was non-beneficial at the time of the disability occurring June 13th.

On June 24th, being within thirty days from May 27th, the policy not having then lapsed, although being non-beneficial for reasons above stated, the policy in suit was issued, upon which policy no premiums were ever paid, and which lapsed for non-payment thereof at the expiration of thirty days from issue, or on July 24th. Now, notwithstanding the first policy was non-beneficial on June 13th, the date of the occurrence of the disability, and was never beneficial afterwards, the defendant company upon proof having been received Nov. 4th of disability up to July 31st, paid $60, the full amount of disability covered by said proof from June 13th to July 31st, being one week more than the life of the second policy, provided the same had ever been in force.

There is nothing in the case that shows the plaintiff or Flaherty in his lifetime, in any way complied with the provisions of Sec. 8, in regard to any disability arising after July 31st, if any existed. The company has had no notice as required by said section of any disability since said date, or any physician's certificate of the duration or character of the same; and said section expressly provides that unless notice is given within a certain time and the proper blanks filled out and forwarded to the company, the insured will not be entitled to any benefits.

No notice of any disability occurring after July 31st, under the second policy, was given within sixty days; and no certificate of physician or proof of any kind was given within thirty days of termination of disability or at any time thereafter. Those requirements are plain, and there is no evidence whatever of any waiver on the part of the company, and without such proofs or certificate of attending physician, the company has no sufficient knowledge upon which to base any action either of allowance or disallowance of any claim. *Kimball* v. *Accident Assoc.* 90 Maine, 183.

There is nothing to show from that time up to within three or

four weeks previous to his decease that he was under the care of a physician or confined to the house, or in such a condition that he might not expect to fully recover, until about the first of November, when he consulted Dr. McDonough, and died on the 28th.

That Flaherty did not consider himself entitled to benefits after July 31st is shown by the fact, that after he was repeatedly reminded that no benefit could be allowed until a physician's certificate was filed,—and that requirement was clearly brought to the attention of himself and wife, so that there could be no misunderstanding about it,—on November 4, he procured a physician's certificate of disability only from July 6th to July 31st, which with another certificate made still later, for previous disability, covered the whole time from June 13th to July 31st, for which benefits have been paid. Now, if, on November 4, and still later, when he sent in certificate of previous disability, he knew or thought he was entitled to benefits after July 31st, why did he not have sent in a certificate of the whole or some part of the time between July 31st and November 4th? There were over three months time, for which if the company was liable, or if he even thought it was, liable, provided he had an attending physician during that time, for which he might have procured a certificate to be filed; but instead of that he procured two certificates covering previous disability only. Certainly he was not ignorant of the requirement, and the only conclusion that can be drawn is, that he either knew that the policy was lapsed or non-beneficial for non-payment of dues or the non-fulfillment of some requirement on his part or that he was not in that physical condition whereby he was entitled to benefits.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

WISWELL, J. The plaintiff's intestate was the holder of a certificate issued by the defendant corporation under date of June 24, 1895, which provided for the payment to him, subject to many conditions and qualifications, of the sum of $10 a week for each week's disability caused by accident or disease.

He had been the holder of another certificate, since April, 1894, issued by the same company, which upon June 24, 1895, was surrendered and the new one of that date taken in exchange. The later certificate was in some respects more beneficial to the company than the first one.

On June 13, 1895, the deceased suffered a hemorrhage of the lungs and shortly after gave notice of his disability and its cause to the company, upon one of its blanks furnished for the purpose. This notice was received by the company on June 26.

He seems to have furnished evidence, satisfactory to the company, of a disability which continued until July 31, 1895, because for that period of time, the company has since paid the weekly benefit.

The deceased died on November 28, 1895. In this action his administrator seeks to recover the stipulated sum per week from July 31, 1895, to the time of his death. The case comes to the law court upon report. Various objections are urged by the defendant to the maintenance of the suit.

According to the strict terms of the certificate, upon which the suit is brought, the plaintiff's intestate was not entitled to the weekly benefit provided therein, because disability caused by accident or disease within thirty days of the date of the certificate was excluded from its provision. But we do not regard the certificate issued June 24, as a new contract, but rather as evidence of a modification of the contract which had been in force since April, 1894.

The deceased had not strictly complied with a condition of the contract to pay dues weekly in advance. The dues that were payable May 27, 1895, on the first certificate, were paid June 10, and none were afterwards paid. One of the provisions of the certificate provided that: "No benefit will be paid for death or disability accruing while said dues remain more than two weeks overdue." But we think that the failure of the deceased to comply with this condition may fairly be inferred to have been waived by the company by the issuance of the new certificate of June 24, especially in view of the fact that the company must have consid-

ered the condition waived, when it paid the stipulated sum up to July 31, 1895.

We do not think that the contract contemplated the payment of dues during a period of disability, but even if it were otherwise, the company had in its hands money due the deceased from which it might have deducted the amount of his weekly dues

It is further urged that there was a failure upon the part of the deceased to comply with the condition relative to giving notice of disability; but between the 13th and 26th days of June, he gave notice to the company of his disability, upon one of the blanks furnished by the company. So long as that disability continued, from the same cause, we do not understand that the contract required further notice.

As to the remaining objection, there is more difficulty. The certificate contains the following provision: "Benefits shall be paid only for such time as the insured is confined to the house, or totally disabled and under the care of a physician and incapacitated thereby from following some legitimate business or occupation." The evidence in the case does not show that after July 31, and up to within a short time before his death, the deceased was confined to the house, or totally disabled, or under the care of a physician, or incapacitated thereby from following business or occupation.

We think that the evidence does show that the deceased, from the time of his first sickness until his death, suffered from the same disease, although the extent of his disability is not shown; and that from the time that he called upon a physician, who testified in the case he was totally disabled within the meaning of the contract. This length of time is somewhat indefinite; the physician says in his testimony, that it was three or four weeks before his death. For that time he was entitled to receive the sum mentioned and his administrator may recover it in this action.

*Judgment for plaintiff for $30.*